1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

5

6

7

| CAMPIDOGLIO LLC, et al., | |
|---|---|
| Plaintiffs, | |
| v. | C12-949 TSZ |
| WELLS FARGO & COMPANY, et al., | ORDER |
| Defendants. | |

8

9

10

11

12

13

14        THIS MATTER comes before the Court on a motion to dismiss by Defendant

15   Wells Fargo Bank, N.A. ("Defendant").  Defendant Wells Fargo & Company is not a

16   party to this motion.[1]  Having reviewed the memoranda, declarations, and exhibits

17   submitted by the parties,[2] the Court enters the following Order.

18   ///

19   ///

20   _____

21   [1] Wells Fargo & Company filed a separate motion for summary judgment, docket no. 11, on different
     grounds.  That motion will be considered separately following resolution of this motion.

22   [2] The Court finds that this matter can be decided without oral argument.

23

ORDER - 1

### A. **Background**

This is a putative class action alleging breach of contract, breach of the duty of good faith and fair dealing, violation of the Washington Consumer Protection Act ("CPA"), and unjust enrichment.

#### 1. **Plaintiffs' Claims**

Plaintiffs' claims arise out of loans from World Savings Bank, FSB, secured by deeds of trust in King County.  Plaintiffs allege that Wachovia (which acquired World Savings Bank) and Wells Fargo (which later acquired Wachovia) substituted the original interest index with new and higher interest indices in violation of the terms of the Notes and state law.

Plaintiffs' action arises from an alleged scheme by Wachovia and later Wells Fargo to inflate interest rates on adjustable-rate mortgage ("ARM") loans from 2007 to present.  Compl., docket no. 1-1, at ¶ 1.  The ARM loans were originated by World Savings Bank, FSB, a subsidiary of Golden West Financial Corp.  *Id.* at ¶ 2.  Wachovia acquired Golden West, and the ARM loans, in 2007.  *Id.*  Wells Fargo then acquired Wachovia in 2008 as a result of the financial crisis.  *Id.*  Plaintiffs took out loans with World Savings Bank before its eventual acquisition by Wells Fargo.

Plaintiffs challenge the calculation of the interest rates charged on the ARM loans.  *Id.* at ¶ 3.  Plaintiffs allege that Wachovia and Wells Fargo substituted a new Cost of Savings Index ("COSI") in breach of the ARM Notes, in Breach of the Covenant of Good Faith, in violation of the CPA, and were Unjustly Enriched as a result.  *Id.* at ¶¶ 4, 82, 88, 94, 100, 107, 112, and 125.

1

### 2.  <u>Changes in the COSI</u>

2          A COSI is an index of interest rates used to determine interest rate adjustments on

3  an ARM.  <u>Id.</u> at ¶ 20.  Generally, the interest rate charged on an ARM loan is calculated

4  by reflecting the interest rate offered on deposit accounts.  <u>Id.</u>  Initially, World Savings

5  Bank used Golden West's COSI to calculate the interest rates.  <u>Id.</u> at ¶ 22.  The Note

6  provided a description of Golden West's COSI as the "Index."  Compl., docket 1-1, Ex.

7  A, at 2.  "The Index is the weighted average of the interest rates in effect of the last day

8  of each calendar month on the deposit accounts of the federally insured depository

9  institution subsidiaries ("Subsidiaries") of Gold West Financial Corporation ("GDW"), as

10  made available by GDW."  <u>Id.</u>  The Index calculation included "all of the items and

11  adjustments that GDW uses to calculate the line item currently called 'cost of deposits'

12  that appears in the quarterly and annual reports to shareholders as well as in other

13  financial reports publicly distributed by GDW."  <u>Id.</u>  Importantly, the Note allowed the

14  substitution of a new index.  <u>Id.</u> ("If an index is substituted as described in this § 2(E), the

15  alternative index will become the Index.").

16          The Note described the process for the selection of an alternative index by the

17  Lender if the Golden West COSI was "no longer available."  <u>Id.</u>  "The selection of an

18  alternative index shall be at the Lender's sole discretion.  The alternative index may be a

19  national or regional index or another type of index approved by the Lender's primary

20  regulator."  <u>Id.</u>  The Note also required the Lender to provide notice of this change to the

21  borrower.

22

23

After Wachovia's acquisition of Golden West in 2006, Wachovia substituted a new index, the Wachovia COSI, because the Golden West COSI was no longer available. Compl., docket no. 1-1, at ¶¶ 24–25. The Wachovia COSI calculated the index using only certificates of deposits, which generally have higher rates than money market or savings accounts. *Id.* at ¶ 25. Thus, the substitution raised the Plaintiffs' monthly payments. *Id.* at ¶ 26. Plaintiffs allege that the Wachovia COSI was never approved by the Office of Thrift Supervision ("OTS"), its primary regulator, and was not a national or regional index, as required by the Note. *Id.* at ¶¶ 41–45.

The second substitution occurred in the fall of 2009, following Wells Fargo's acquisition of Wachovia in 2008. *Id.* at ¶ 27. The Wells Fargo COSI also calculated the index based on certificates of deposits. *Id.* at ¶ 28. Plaintiffs allege that this substitution also raised the monthly rate and was not in compliance with § 2(E) of the Note. Compl., docket no. 1-1, Ex. A, at 2. Finally, Plaintiffs allege that Wells Fargo did not track the index properly in 2010 and 2011. Compl., docket no 1-1, at ¶ 28.

### 3. **Applicable Law**

Because the loans originated with World Savings Bank, a federal savings bank, they were and are subject to federal regulation under the Home Owners Loan Act ("HOLA"), 12 U.S.C. § 1464 and the accompanying federal regulations. Under the federal regulations, "federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part." 12 C.F.R. § 560(a). The parties do not dispute the

ORDER - 4

applicability of HOLA to the loans in question at origination by World Savings Bank or when acquired by Wachovia and then Wells Fargo.[3]

**B.  Discussion**

From these two COSI substitutions, Plaintiffs derive seven causes of action: four for breach of contract, breach of the duty of good faith and fair dealing, violation of the CPA, and unjust enrichment.  Defendant moves to dismiss all of the claims based on two alternative arguments: failure to plead specific facts and federal preemption.

**1.  Motion to Dismiss Standard**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  The plaintiff is obligated to provide grounds for his entitlement to relief that amount to more than "labels and conclusions" or "formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Though the court must accept factual allegations as true, it need not grant the same deference to legal conclusions.  *Iqbal*, 556 U.S. at 678–679 (citing *Twombly*, 550 U.S. at 555).  To the extent documents referenced in a complaint contradict a plaintiff's conclusory

---

[3] The parties' agreement on this point is supported by case law.  *E.g.*, *Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961, 971 (N.D. Cal. 2010) ("Thus, although Wells Fargo itself is not subject to HOLA and OTS regulations, this action is nonetheless governed by HOLA because Plaintiffs' loan originated with a federal savings bank and was therefore subject to the requirements set forth in HOLA and OTS regulations.").

1   allegations, the court is not required to accept those allegations as true.  _Boilermakers_

2   _Nat. Annuity Trust Fund v. WaMu Mortg. Pass Through Certificates, Series AR1_, 748 F.

3   Supp. 2d 1246, 1251 (W.D. Wash. 2010) (citing _Steckman v. Hart Brewing, Inc._, 143

4   F.3d 1293, 1295–96 (9th Cir. 1998)).

5               **2.  Judicial Notice**

6        Defendant requested the Court take judicial notice of a variety of documents.[4]  In

7   testing the complaint's legal adequacy, the court may consider material properly

8   submitted as part of the complaint, including exhibits attached thereto, or material subject

9   to judicial notice.  _Swartz v. KPMG LLP_, 476 F.3d 756, 763 (9th Cir. 2007).  Under the

10  incorporation by reference doctrine, the Court is permitted "to take into account

11  documents 'whose contents are alleged in a complaint and whose authenticity no party

12  questions, but which are not physically attached to the [plaintiff's] pleading.'"  _Knievel v._

13  _ESPN_, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting _In re Silicon Graphics Inc. Sec._

14  _Litig._, 183 F.3d 970, 986 (9th Cir. 1999)).  The Ninth Circuit has "extended the

15  'incorporation by reference' doctrine to situations in which the plaintiff's claim depends

16  on the contents of a document, the defendant attaches the document to its motion to

---

18  [4] Defendant listed the following documents in its request: 1) ARM between World Savings Bank and
Campidoglio, LLC; (2) ARM between World Savings Bank and San Marco, LLC; (3) Deed of Trust

19  signed by Carmen, LLC; (4) Deed of Trust signed by Campidoglio, LLC; (5) Deed of Trust signed by San
Marco, LLC; (6) Certificate of Corporate Existence for World Savings Bank, FSB as a federal savings
bank; (7) Letter from OTS authorizing a name change from World Savings Bank, FSB to Wachovia

20  Mortgage, FSB; (8) Charter of Wachovia Mortgage, FSB; (9) Official Certification of the Comptroller of
the Currency that Wachovia Mortgage, FSB converted to Wells Fargo Bank Southwest, N.A. and merged

21  into Wells Fargo Bank, N.A.; (10) Deed of Trust signed by unknown individual securing a World Savings
Bank loan; (11) ARM between unknown individual and World Savings Bank; (12) Deed of Trust by

22  unknown individual securing a World Savings Bank loan; and (13) ARM between unknown individual
and World Savings Bank.  Docket no. 15, Exs. 1–13.

dismiss, and the parties do not dispute the authenticity of the documents, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Id.* (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).

As a result, the Court takes judicial notice the Mortgage Notes and Deeds of Trust executed by the Plaintiffs provided by Defendant in its Request for Judicial Notice, docket no. 15, Exs. 1–4. As the status of World Savings Bank as a federal savings bank is not challenged, the Court also takes judicial notice of World Savings Bank's certification documents, docket no. 15, Ex. 6. Similarly, Plaintiffs do not challenge the applicability of HOLA to the loans following the merger of Wachovia and Wells Fargo. As a result, the Court takes judicial notice of Wachovia Mortgage's charter document and certification of name change and merger, docket no. 15, Exs. 8–9. However, the Court declines to take judicial notice of the redacted Mortgage Notes and Deeds of Trust, docket no. 15, Exs. 10–13.

### 3. **OTS Approval**

Defendant first challenges the adequacy of Plaintiffs' factual pleadings in the complaint related to OTS approval of an alternative index. Def. Mot. to Dismiss, docket no. 14, at 7. Defendant argues that Plaintiffs failed to properly allege the facts necessary to support their claim that the Defendants used "unapproved" indices, a centerpiece of Plaintiffs' fourth claim for breach of contract, *id.* at 5–7; Compl., docket no. 1-1, at ¶¶ 96–102, and incorporated into the remaining claims. Compl., docket no. 1-1, at ¶¶ 103, 109, and 124. Specifically, Plaintiffs did not plead that OTS raised "supervisory concerns or significant law or policy issues" when Defendants filed its notice with OTS.

ORDER - 7

1   Def. Mot. to Dismiss, docket no. 14, at 7.  The OTS's silence following Wachovia's

2   request on December 15, 2006, according to Defendant, is an approval of the Wachovia

3   COSI under federal regulation.  _Id._  This silence as approval interpretation is the

4   cornerstone of Defendant's argument.

5         Defendant bases this interpretation of OTS's silent approval on 12 C.F.R.

6   § 560.35(d)(3), 12 C.F.R. § 516.280(b), and the Note.  The Note allowed for the

7   substitution of a new index when the original index became unavailable, which is

8   undisputed.  Compl., docket 1-1, Ex. A, at 2.  The Note required the substituted index to

9   be a regional, national, or other index approved by OTS.  _Id._  Neither the Wachovia COSI

10  nor the Wells Fargo COSI qualifies as a regional or national index.  According to

11  Defendant, a federal savings association "'may use' a proprietary index such as the

12  Wachovia COSI and Wells Fargo COSI by 'filing a notice' with the OTS."  Def. Mot. to

13  Dismiss, docket no. 14, at 7 (quoting 12 C.F.R. § 560.35(d)(3)).  After filing the notice,

14  OTS has 30 days to notify the association of "supervisory concerns or raises significant

15  issues of law or policy."  12 C.F.R. § 560.35(d)(3).  Absent such a notification by OTS,

16  the association may use the index.  _Id._  Other OTS regulations support this interpretation

17  of OTS's silence.  _See_ C.F.R. § 516.280(b) [5] ("If OTS fails to act under paragraph (a)(1)

18  of this section, your application is approved.").

19        In this case, however, Defendant's argument is not persuasive because this is a

20  motion to dismiss.  While it may well be that Defendant's interpretation of the silence

21

22  [5] 12 C.F.R. § 516 applies "whenever an OTS regulation requires any person (you) to file an application with OTS."  12 CFR § 516.112.

23

ORDER - 8

1   from OTS is correct, it is not necessarily the case that Plaintiffs must adopt Defendant's

2   interpretation and plead the specific facts that Defendant considers necessary.  Plaintiffs

3   allege in multiple locations that Defendant failed to receive approval for the new COSI

4   from OTS.  Compl., docket 1-1, at  ¶¶ 4, 42–46, 61, 98, 100–101, 107, and 114.  In fact,

5   Plaintiffs formulate two versions of the allegation.  First, Plaintiffs allege that Wachovia

6   and Wells Fargo received no approval.  _See_, _e.g._, _id._ at ¶ 42.  Second, Plaintiffs allege

7   that any approval was for new loans, not existing loans.  _See_, _e.g._, _id._ at ¶ 101.  Because

8   this Court must accept Plaintiffs' factual allegations as true, _Iqbal_, 556 U.S. at 678–679,

9   either factual allegation is sufficient to state a claim.[6]  Moreover, Defendant's motion

10  only addresses the approval of Wachovia's COSI, Def. Mot. to Dismiss, docket no. 14, at

11  8, and ignores whether Wells Fargo received approval for its COSI before the substitution

12  in October 2009.  _See id._  This notable absence supports Plaintiffs' allegation that the

13  Wells Fargo COSI was neither requested or approved.[7]

14      Ultimately, this question of fact, the approval or non-approval of the substituted

15  COSI by OTS, is the linchpin in the case.  Plaintiffs allege that OTS did not approve

16  either COSI used by Wachovia or Wells Fargo as Defendant was clearly required to do

---

18

19  [6] Nor has Defendant identified any documentation associated with the complaint or submitted any documentation with its motion that contradicts plaintiff's allegations, which would allow this Court to ignore the contradicted allegations.  _Boilermakers Nat. Annuity Trust Fund_, 748 F. Supp. 2d at 1251.

20  [7] As alleged in ¶ 45 of the Complaint, Wachovia filed a notice with OTS requesting approval of its new COSI.  Plaintiff alleges at ¶ 43 that it was approved for "new loans."  Plaintiff, however, fails to

21  adequately address the fact that such notice is "deemed approved" unless OTS notifies the bank of "supervisory concerns" or significant issues of law or policy" within 30 days.  12 C.F.R. § 516.280(b).

22  What effect, if any, of the alleged approval for "new loans" and the application of the "deemed approved" language in the regulation cannot be resolved in a motion to dismiss and must await summary judgment.

23

ORDER - 9

under the Note.  Compl., docket no. 1-1, Ex. A, at 2 ("The alternative index may be a national or regional index or another type of index approved by the Lender's primary regulator.").  As a result, the motion to dismiss based on Defendant's theory of silent OTS approval must be denied.

Aside from the Defendant's contention that Plaintiffs did not adequately allege the COSI non-approval, Defendant does not challenge Plaintiffs stated claims under state law.  The Court therefore assumes for purposes of evaluating the motion to dismiss that Plaintiff adequately stated claims under Washington state law.  The only remaining question is whether HOLA preempts the state law claims.

### 4.  **Federal Preemption**

The remainder of Defendant's motion focuses on the doctrine of federal preemption by HOLA.  Congress enacted HOLA to charter savings associations under federal law.  _Bank of America v. City and County of S.F._, 309 F.3d 551, 559 (9th Cir. 2002), _cert. denied_, 538 U.S. 1069 (2003).  The goal of HOLA was to restore public confidence in federal savings and loan associations by creating a nationwide system that centrally regulated according to "best practices."  _Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta_, 458 U.S. 141, 160–161 (1982).  To accomplish this task, HOLA and its regulations are a "radical and comprehensive response to the inadequacies of the existing state system," and "so pervasive as to leave no room for state regulatory control."  _Conference of Fed. Sav. & Loan Ass'ns v. Stein_, 604 F.2d 1256, 1257, 1260 (9th Cir. 1979), _aff'd_, 445 U.S. 921 (internal citations omitted); _see also_ OTS, Final Rule, 61 Fed.Reg. 50951, 50965 (Sept. 30, 1996) ("As a result, instead of being subject to a

hodgepodge of conflicting and overlapping state lending requirements, federal thrifts are free to originate loans under a single set of uniform federal laws and regulations.").  Nor does the typical presumption against preemption of state law apply "because there has been a history of significant federal presence in national banking."  _Bank of America_, 309 F.3d at 559.

Moreover, through HOLA, "Congress gave the Office of Thrift Supervision ("OTS") broad authority to issue regulations governing thrifts."  _Silvas v. E*Trade Mortg. Corp._, 514 F.3d 1001, 1005 (9th Cir. 2008) (citing 12 U.S.C. § 1464).  OTS enjoys "plenary and exclusive authority . . . to regulate all aspects of the operations of Federal savings associations."  12 C.F.R. § 545.2.  Pursuant to this authority, OTS promulgated 12 C.F.R. § 560.2 as a preemption regulation, which "'has no less preemptive effect than federal statutes.'"  _Silvas_, 514 F.3d at 1005 (quoting _de la Cuesta_, 458 U.S. at 153).  It provides:

> OTS hereby occupies the entire field of lending regulation for federal savings associations.  OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation.  Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section.

The paragraph that follows provides an illustrative list of "the types of state laws preempted" by § 560.2(a).  12 C.F.R. § 560.2(b).  Most relevant here, § 560.2(b) preempts state laws that purport to impose requirements regarding:

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance,

payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

. . . .

 (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants.[8]

The Ninth Circuit has consistently recognized the preemption authority of HOLA under § 560.2.  In _Silvas_, it adopted the following analysis when evaluating preemption:

When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis ends there; the law is preempted.  If the law is not covered by paragraph (b), the next question is whether the law affects lending.  If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted.  This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

514 F.3d at 1005 (quoting OTS, Final Rule, 61 Fed.Reg. 50951, 50966–67 (Sept. 30, 1996)).  However, the preemption regulation is not total; state laws—like contract, commercial, and tort law—that only incidentally affect[9] lending operations of federal

---

[8] Defendant argues that 12 C.F.R. § 560.2(b)(1), which preempts state laws regarding "[l]icensing, registration, filings, or reports by creditors" is also significant to this case.  However, Plaintiffs do not question the adequacy of these documents provided by Defendants at any point.  Rather, Plaintiffs contend that, _inter alia_, Defendants never made the requisite filings or never received approval. Similarly, Defendant's vague argument that the state laws impose "servicing" requirements preempted by § 560.2(b)(10) fails.  As noted by Plaintiffs, that other district courts have used this clause does not substantiate Defendant's claims that the state law, as applied here, creates additional servicing requirements.

[9] State laws that do not affect lending practices might include tax statutes or zoning ordinances.  _See de la Cuesta_, 458 U.S. at 172 (O'Connor, J., concurring) (noting HOLA's language does not suggest "Congress intended to permit [OTS] to displace local laws, such as tax statutes and zoning ordinances, not directly related to savings and loan practices.").

ORDER - 12

1   savings associations are not preempted.  *Id.* at 1006 (citing 12 C.F.R. § 560.2(c)).

2   Accordingly, the key determination in a case in which a plaintiff uses state law claims to

3   challenge the actions of a federal savings association is whether the state law claim

4   infringes on the federal regulatory power over the association.

5           As outlined by the Ninth Circuit and OTS, the first step is to determine if any of

6   the Plaintiffs' state law claims, "as applied," are the "type[s] of state law contemplated in

7   the list under paragraph (b) of 12 C.F.R. § 560.2."  *Id.*  Laws within that list are

8   preempted.  Laws not within paragraph (b) of § 560.2 will then be analyzed for their

9   effect on federal savings associations as described in paragraph (c).  Consequently, it is

10  necessary to examine the Plaintiffs' causes of action separately.

11                    **a.  Breach of Contract – Interest Rate Calculation**

12          The first cause of action alleges that Wachovia and Wells Fargo breached the

13  terms of the Notes when they calculated the interest rate index using only certificates of

14  deposit, instead of all deposits.  Compl., docket no 1-1, ¶¶ 78–83.  Plaintiffs' claim is,

15  essentially, that Defendants incorrectly calculated, and inflated, the interest rates starting

16  in the fourth quarter of 2007.  *Id.* at ¶ 82.  The calculated index, according to Plaintiffs,

17  was required to include all deposits as described in the Note.  Compl. docket no. 1-1, Ex.

18  A., at 2.  Thus, Plaintiffs' claim is that Defendants "improperly inflated interest rates."

19  Compl., docket no. 1-1, at ¶ 46.  Regardless of the accuracy of Plaintiffs' reading of the

20  terms of the Note or Defendant's adherence to Plaintiffs' interpretation, the claim falls

21  squarely within a preempted category of 12 C.F.R. § 560.2(b).

22

23

ORDER - 13

1    State laws that impose requirements on "the terms of credit,

2  including . . . adjustments to the interest rate" are preempted.  12 C.F.R. § 560.2(b)(4).

3  Plaintiffs' first breach of contract would impose a new requirement—not one found under

4  OTS regulation—for the calculation of the index on loans made by federal savings

5  associations.  HOLA expressly preempts the imposition of additional requirements

6  beyond the federal regulation for "adjustments to the interest rate."  12 C.F.R.

7  § 560.2(b)(4).  Although Plaintiffs describe the extraction of items from the paragraph (b)

8  list as "cherry-pick[ing]," Pla. Opp'n, docket no. 24, at 21, this is exactly the purpose of

9  the list.  12 C.F.R. § 560.2(b) ("the types of state laws preempted by paragraph (a) of this

10  section include, without limitation, state laws purporting to impose requirements

11  regarding . . .").  Thus, on its face, Plaintiffs' first claim falls within the automatically

12  preempted laws identified by HOLA because it imposes requirements on the interest rate.

13    Plaintiffs contend that § 560.2(c) "explicitly exclude Plaintiffs' causes of action

14  from preemption."  _See_ Pla. Opp'n, docket no. 24, at 10.  Plaintiffs' opposition misreads

15  12 C.F.R. § 560.2(b) and (c) by relying on case law from another circuit.  _Id._  Plaintiffs'

16  reliance on two Seventh Circuit cases—_Wigod v. Wells Fargo Bank, N.A._, 673 F.3d 547

17  and _In re Ocwen Loan Servicing, LLC_, 491 F.3d 638—is unavailing.  While the Seventh

18  Circuit's interpretation could be persuasive authority that § 560.2(b) and (c) should be

19  "read together," the binding authority in the Ninth Circuit is directly at odds.  _Silvas_, 514

20  F.3d at 1005.  Bound by the precedent establishing that § 560.2 should be read as "steps,"

21  _id._, and the recognized field preemption under HOLA, _Conference of Fed. Sav._, 604 F.2d

22  at 1260, this Court declines to adopt Judge Posner's more wholistic interpretation.

23

ORDER - 14

Likewise, Plaintiffs' discussion of Washington state case law is also misplaced. Plaintiffs cite to and discuss _McCurry v. Chevy Chase Bank, FSB_, 169 Wn.2d 96 (2010), which upheld breach of contract and CPA claims regarding certain lending fees.  Pla. Opp'n, docket no. 24, at 11.  The Washington Supreme Court held that contract law "does not purport to impose requirements on loan- related fees; state contract law instead requires parties to adhere to the terms of their contracts."  _Id._ at 104.  Further, the court concluded that "[f]orcing [the bank] to adhere to the terms of its contract only incidentally affects the loan-related fees."  _Id._ at 104–05.  _McCurry_ relies heavily, however, on non-Ninth Circuit case law, including _Ocwen_, which differs from the sequential "as applied" test of _Silvas_.

Consequently, in this district the Ninth Circuit test must be used; that is, whether the state law "as applied" falls within § 560.2(b).  _Silvas_, 514 F.3d at 1007.  When Plaintiffs' breach of contract theory is applied in this case, it alters the regulation of the adjustment of interest rates.  In fact, this is the basis for Plaintiffs' complaint—that if Plaintiffs' calculation was followed the interest rates would be lower.  Compl., docket no. 1-1, at ¶ 42.  The "as applied" test brings breach of contract, which is theoretically not preempted, within the purview of § 560.2(b)(4) under this set of facts.[10]

---

[10] As the state law claim falls within paragraph (b), the Court need not reach the question of whether the law fits within paragraph (c).  _Silvas_, 514 F.3d at 1005.  Even if the Court did reach the incidental affect analysis, the result would be the same.  Plaintiffs' claim based on state law would affect lending operations in significant ways, as lenders would not be able to rely on compliance with regulations regarding index calculation.  Additionally, the regulation clearly instructs that "OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation."  12 C.F.R. § 560(a).  Moreover, the Court must interpret

1    Thus, the First Cause of Action for breach of contract should be dismissed.

2                **b.  Breach of Contract – Substitution of Indexes**

3    For similar reasons, Plaintiffs' second cause of action challenging the substitution

4    of the indices by Defendants is also preempted.  There is no discernible difference

5    between the first and second cause of action.  In the first cause of action, Plaintiffs

6    alleged that Defendants breached their duty to adjust the index used to calculate interest

7    rates "to accurately reflect the weighted average of the interest rates paid on all deposit

8    accounts," Compl., docket no. 1-1, at ¶ 80, by using indices "that did . . . not reflect the

9    weighted average of the interest rates payable on all deposit accounts."  *Id.* at ¶ 82.  The

10   second cause of action alleges that Defendants breached their duty not to substitute only

11   indices calculated based on all deposit accounts by using indexes that "did . . . not

12   reflect the weighted average of the interest rates payable on all deposit accounts."

13   Compl., docket no. 1-1, at ¶ 88.  The claims are merely the reverse of each other—the

14   first concentrated on the inaccurate calculation and the second on the substitution of the

15   inaccurate calculation.

16   The "duty" identified by Plaintiffs in the second cause of action is coextensive

17   with the first.  Consequently, the application of the state law imports a requirement

18   related to the "adjustment of interest rates" that is preempted by § 560.2(b)(4).

19   ///

20   ///

21

22   paragraph (c) narrowly and resolve any doubt in favor of preemption.  *Silvas*, 514 F.3d at 1005 (quoting
     OTS, Final Rule, 61 Fed.Reg. 50951, 50966-67 (Sept. 30, 1996)).

23

### c.  **Breach of Contract – Transparency of Calculation**

In addition to falling within the preemptive effect of § 560.2(b)(4), Plaintiffs' third cause of action uses state law to impose requirements preempted under § 560.2(b)(9). This section preempts state law that purports to impose requirements relating to "[d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants."  12 C.F.R. § 560(b)(9).

Plaintiffs allege that portions of the Notes and Loan Program Disclosures created a duty to use an index based on the interest rates of "all deposit accounts."  Compl., docket no. 1-1, at ¶¶ 30–31.  They further allege that the index must be publicly verifiable; a duty that Wachovia and then Wells Fargo failed to satisfy when they filed public reports that failed to disclose items that would make the Wachovia COSI verifiable to borrowers. _Id._ at ¶¶ 37–40.  The complaint carries these allegations forward into the third claim for relief.  _Id._ at ¶ 92 (alleging that calculation of interest rates to be charged on the ARM must be based on "indexes whose calculation could be verified by borrowers by reference to SEC filings, quarterly and annual reports, or other publicly disseminated data").

Because these claims challenge the adequacy of disclosures related to the interest rate and other reports, they are also preempted under the "disclosure" clause of § 560.2(b)(9).  _Silvas_, 514 F.3d at 1005–06 (preempting claims of inadequate disclosures of lock-in fees); _Garcia v. Wachovia Mortg. Comp._, 676 F. Supp. 2d 895, 913 (C.D. Cal.

2009) (preempting statutory claims regarding adjustable rate mortgage disclosures and interest rates).  The disclosure of content relating to credit contracts is an area expressly identified as preempted.  12 C.F.R. 560.2(b)(9).  Plaintiffs cannot use a state law claim to create an additional duty upon Defendant beyond HOLA disclosure requirements.

### d. **Breach of Contract – Use of Unapproved Indexes**

The sole breach of contract claim that survives HOLA's preemptive reach is the fourth breach of contract claim.  Plaintiffs allege that OTS did not approve the indices, Compl., docket no. 1-1, at ¶¶ 41–46, 96–102 , and that "by using the indices nonetheless, Defendants violated the explicit terms of its contracts with the Plaintiffs."  Pla. Opp'n, docket no. 24, at 15.  Defendant's motion attempts to categorize this breach of contract claim as creating additional duties, as it does with the first three claims.

As applied, this state law claim does not create additional requirements under HOLA.  Instead, the state law serves as a mechanism to enforce the parties' agreement to follow HOLA and its accompanying regulations.  World Savings Bank, and now Defendant after its acquisition of these loans, promised to use only OTS-approved alternative indices if the original index became unavailable.  Compl., docket no. 1-1, Ex. A, at 2 ("The alternative index may be a national or regional index or another type of index approved by the Lender's primary regulator.").  The original index was not available after Wachovia acquired World Savings Bank.  Wachovia then substituted the Wachovia COSI.  Neither party disputes that the primary regulator was and is OTS and should have approved the proprietary index before use.  Plaintiffs allege that the required OTS approval was not obtained.  Likewise, Plaintiffs allege that Wells Fargo's

substitution of the Wells Fargo COSI was unapproved.  Thus, the state law merely

enforces Defendant's promise to obtain OTS approval in compliance with OTS

procedure.  This is not an additional requirement imposed to be preempted by § 560.2.

Defendant also argues that 12 C.F.R. § 560.35 preempts state law.  Mot. to

Dismiss, docket no. 14, at 20.  No case has ever identified this section as having

independent preemptive effect because it falls outside of § 560.2.  Defendant's extension

of a different section on a state-chartered lender under the Parity Act is not convincing.

*See id.* at 19–20.  If Congress and OTS wanted this section to have the sweeping

preemptive effect for which Defendant argues, both bodies know how to draft such

statutory and regulatory language.  *See* 12 U.S.C. § 1464(a); 12 C.F.R. § 560.2

### e.  <u>Breach of the Covenant of Good Faith and Fair Dealing</u>

Plaintiffs' fifth claim for breach of the covenant of good faith and fair dealing

survives because the fourth cause of action for breach of contract is not preempted.  The

implied duty of good faith and fair dealing exists in every contract.  <u>*Badgett v. Sec. State*</u>

<u>*Bank*</u>, 116 Wn.2d 563, 569 (1991).  There is no dispute that the parties here had a valid

contract.  Thus, each party was obligated to "cooperate with each other so that each may

obtain the full benefit of performance."  *Id.*

Plaintiffs' claim incorporates by reference the previous allegations, including the

use of unapproved indices by Defendants.  Compl., docket no. 1-1, at ¶ 103.  Plaintiffs

also specifically plead that Defendants breached the implied duty by "using indexes that

were not approved for application to the loans at issue by primary regulator."  *Id.* at

¶ 107.  Based on this allegation, Plaintiffs plead sufficient facts to demonstrate a plausible

claim.  *Iqbal*, 556 U.S. at 678.  Plaintiffs' claim for breach of the implied duty of good

faith and fair dealing is also tied to a specific contract obligation—Defendants obligation

to use a regional, national or OTS-approved alternative index—as required by

Washington state law.  *Gossen v. JPMorgan Chase Bank*, 819 F. Supp. 2d 1162, 1170

(W.D. Wash. 2011) (requiring a plaintiff to identify a specific contractual obligation that

relates to a breach of the duty of good faith and fair dealings).  Defendant presented no

other legal argument, aside from federal preemption, to supports its motion to dismiss

this claim.

Therefore, Plaintiffs' fifth claim survives the motion to dismiss solely arising out

of the breach of contract claim.

### f.  Violation of the Washington Consumer Protection Act

Plaintiffs' CPA claim survives for similar reasons as the fourth and fifth causes of

action.  Plaintiffs' complaint identifies seven "unfair or deceptive acts or practices"

undertaken by Defendants in servicing the loans:

A. engaging in bad faith in adjusting mortgage interest rates;
B. using and substituting indexes for the calculation of interest rates that were not calculated on the bases provided for in the Notes;
C. making untrue and misleading statements about the types of deposit accounts included in the substituted indexes;
D. using indexes whose calculation was not transparent, ascertainable, or verifiable by Plaintiffs and Class Members;
E. using indexes that were not approved for application to the loans at issue by the primary regulator;
F. unlawfully and unfairly manipulating the index rates and changing the basis for their calculation after Plaintiffs and Class Members were bound to 30-year loans; and
G. making untrue or misleading statements about the interest rates to be charged and the indexes used to calculate them.

Compl., docket no. 1-1, at ¶ 114.  These allegations of unfair or deceptive acts or

practices are subject to the same federal preemption as Plaintiffs' claims for breach of

contract.  Consequently, the field preemption analysis of § 560.2 and _Silvas_ applies.  _See_

_Dvornekovic v. Wachovia Mortg._, No. C10-5028RBL, 2010 WL 4286215, at *2 (W.D.

Wash. Oct. 26, 2010).

     As with Plaintiffs' breach of contract claims, most of Plaintiffs' allegations fall

within the list of preempted state laws in § 560.2(b).  Specifically, § 560.2(b)(4) preempts

Plaintiffs' claims labeled sub-paragraphs A, B, and F, Compl., docket no. 1-1, at ¶ 114,

because they impose requirements on the "adjustments of the interest rate."  Likewise,

sub-paragraphs C, D, and G are preempted by § 560.2(b)(9) because they deal with

"disclosures."  The only surviving allegation is sub-paragraph E, which corresponds to

Plaintiffs' fourth breach of contract claim alleging that Defendants failed to receive

regulatory approval for the substituted indices.  Defendant presented no other legal

argument, aside from federal preemption, to supports its motion to dismiss the final

claim.[11]

     Thus, part of the CPA claim survives federal preemption and will not be dismissed

because Plaintiffs plead sufficient facts to demonstrate a plausible claim.  _Iqbal_, 556 U.S.

at 678.

---

[11] Defendant does not challenge that Plaintiffs sufficiently plead facts to support the elements of a CPA claim.  _See_ _Hangman Ridge Training Stable, Inc. v. Safeco Title Ins. Co._, 105 Wn.2d 778, 780 (1986) ("We hold that to prevail in a private CPA action and therefore be entitled to attorney fees, a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation.").

1

### g.  Unjust Enrichment

2         Plaintiffs' claim under their final cause of action survives because this claim

3 incorporates by reference the previous allegations, including the use of unapproved

4 indices by Defendants.  Compl., docket no. 1-1, at ¶ 124.  Defendant presented no other

5 legal argument, aside from federal preemption, to supports its motion to dismiss the final

6 claim.  Consequently, Plaintiffs plead sufficient facts to demonstrate a plausible claim.

7 *Iqbal*, 556 U.S. at 678.

8     ## C.  Conclusion

9         Construing the complaint in the light most favorable to Plaintiffs and accepting

10 their allegations as true, Plaintiffs have stated four claims upon which relief can be

11 granted.  They have sufficiently alleged that Defendant promised to use certain interest

12 rate indices and breached that promise.  Defendant, however, correctly points out that

13 banking law is an area with a history of extensive federal presence.  *Bank of America*,

14 309 F.3d at 551.  The expansive federal regulation of federal savings associations and the

15 preemptive effect of these regulations are not in question.  *See* 12 C.F.R. § 560.2(a).

16 Moreover, the Ninth Circuit has expressed a clear test for preemption of state laws.

17         Under that test, three of Plaintiffs' claims for breach of contract fall within the

18 illustrative list of § 560.2(b) of preempted laws because the laws, as applied in this case,

19 impose requirements on the adjustment of interest rates and the disclosure required for

20 federal savings associations.  Even if the application of these laws fell outside of

21 § 560.2(b), the state laws under these facts "more than incidentally affect the banking

22 operations of Federal savings associations."  12 C.F.R. § 560.2(c).  In the same way,

23

1   Plaintiffs' claims for breach of the implied duty of good faith and fair dealing, violation

2   of the CPA, and unjust enrichment are preempted to the extent they rely on preempted

3   claims.

4         Consequently, Defendant's motion to dismiss is GRANTED as to the First,

5   Second, and Third Causes of Action with prejudice[12] and DENIED as to the Fourth,

6   Fifth, Sixth, and Seventh Causes of Action to the extent not inconsistent with this Order.

7         IT IS SO ORDERED.

8         The Clerk is directed to send a copy of this Order to all counsel of record.

9         Dated this 2nd day of October, 2012.

10

11

12                                    THOMAS S. ZILLY
                                      United States District Judge

13

14

15

16

17

18

19

20   _____

21   [12] Because these claims are dismissed based on federal preemption and binding Ninth Circuit case law,
     Plaintiff could not allege new facts that could give rise to a claim.  *See Silvas*, 514 F.3d at 1008 (affirming

22   lower court's dismissal of entire class action with prejudice).

23

ORDER - 23