UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAMPIDOGLIO LLC, CARMEN LLC, and SAN MARCO LLC,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>Defendants. | C12-949 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on a motion for summary judgment, docket no. 72, brought by defendant Wells Fargo Bank, N.A. ("Wells Fargo"). Having reviewed all papers filed in support of, and in opposition to, Wells Fargo's motion,[1] the Court enters the following Order.

---

[1] Wells Fargo's motion for summary judgment was filed in May 2013. After the motion was fully briefed, the Court decided a discovery motion brought by plaintiffs, and directed Wells Fargo to produce additional documents. See Minute Order (docket no. 106). As a result, Wells Fargo's motion for summary judgment was renoted, plaintiffs were permitted to file a supplemental response, and Wells Fargo was allowed to file a supplemental reply. Id. The Court subsequently ruled on a different discovery motion brought by plaintiffs, and granted leave to plaintiffs to file yet another supplemental response, to which Wells Fargo was given an opportunity to reply; the deadlines were extended twice, and briefing of the pending motion for summary judgment was finally complete in August 2014. See Minute Orders (docket nos. 185, 236, 249, & 255). In addition to the two authorized supplemental responses, plaintiffs have filed two sur-replies, both seeking to strike materials contained in or filed in conjunction with Wells Fargo's supplemental replies. The Court addresses plaintiffs' motions to strike in separate footnotes in this order.

ORDER - 1

**Background**

Plaintiffs Campidoglio LLC, Carmen LLC, and San Marco LLC are Washington limited liability companies that each own a multi-family residential property subject to a deed of trust securing an adjustable-rate mortgage ("ARM") promissory note executed in favor of World Savings Bank, FSB ("World Savings").[2] See Exs. 25-30 to Dolan Decl. (docket no. 87); Complaint at ¶¶ 11-13, Ex. 1 to Notice of Removal (docket no. 1-1). Each note indicates a maximum interest rate of 11.95%, as well as a minimum interest rate, which is 2.65% on the two loans issued in 2004, and 4.11% on the third loan, which originated in 2006. Exs. 25-27 to Dolan Decl. The interest rate for each loan is calculated as the sum of (i) the "stated margin," which for all three loans is 2.65%, and (ii) the "current index," which may vary from month to month. Id.

When the loans were made in 2004 and 2006, the "current index" was the "weighted average of the interest rates in effect as of the last day of each calendar month on the deposit accounts of the federally insured depository institution subsidiaries . . . of Golden West Financial Corporation ("GDW")." Id. At that time, World Savings was a subsidiary of GDW, and the "current index" described in the notes was the GDW "cost of savings" index or GDW COSI. GDW and World Savings were subsequently purchased

---

[2] Campidoglio LLC's note dated January 23, 2004, in the principal amount of $1,025.000, is secured by a deed of trust on property located at 1405 E. John St. in Seattle, Washington, and matures on February 15, 2034. Exs. 25 & 28 to Dolan Decl. Carmen LLC's note dated April 28, 2006, in the principal amount of $1,195,000, is secured by a deed of trust on property located at 633 12th Ave. E. in Seattle, and matures on May 15, 2036. Exs. 26 & 29 to Dolan Decl. San Marco LLC's note dated August 11, 2004, in the principal amount of $2,260,000, is secured by a deed of trust on property located at 1205 Spring St. in Seattle, and matures on August 15, 2034. Exs. 27 & 30 to Dolan Decl.

ORDER - 2

1  by Wachovia Corporation ("Wachovia"), and World Savings changed its name to

2  Wachovia Mortgage, FSB.  <u>See</u> Dolan Decl. at ¶ 2 & Ex. 24.

3        In July 2007, plaintiffs were notified that, because the GDW COSI would no

4  longer be available, it would be replaced with either the Wachovia COSI or, at the

5  borrower's election, the Wachovia certificates of deposit index ("CODI").  Ex. B to

6  Complaint (docket no. 1-1 at 42-44).  Plaintiffs did not elect the CODI.  The Wachovia

7  COSI became the applicable "current index" for the loans at issue sometime between

8  September 15 and October 14, 2007, depending on each plaintiff's billing cycle.[3]  <u>Id.</u>

9  The substitution was pursuant to the following language contained in each note:

> The Lender may choose an alternative index to be the Index if the Index is no longer available. . . .  The selection of the alternative index shall be at the Lender's sole discretion.  The alternative index may be a national or regional index or another type of index approved by the Lender's primary regulator.  The Lender will give notice to the Borrower of the alternative index.

Exs. 25-27 to Dolan Decl.

      As a result of a later merger, Wachovia Mortgage, FSB converted to a national bank with the name Wells Fargo Bank Southwest, National Association.  Ex. 23 to Dolan Decl.  It then merged into Wells Fargo Bank, N.A., the only remaining defendant in this action.[4]  <u>See id.</u>; <u>see also</u> Ex. 24 to Dolan Decl.  In October 2009, plaintiffs received

---

[3] To ensure that the overall interest rate did not increase at the time of index conversion, Wachovia agreed to permanently reduce the "stated margin" on the conversion date if, at that time, the Wachovia COSI was higher than the GDW COSI.  <u>See</u> Ex. B to Complaint (docket no. 1-1).

[4] The Court previously granted summary judgment in favor of, and dismissed all of plaintiffs' claims against, Wells Fargo & Company.  Order (docket no. 36).  The other defendants in this action were sued only as "Does 1 through 25," and plaintiffs have not identified any of these defendants by name, capacity, position, or conduct.  <u>See</u> Complaint at ¶ 19 (docket no. 1-1 at 7).  The deadlines for joining additional

ORDER - 3

notice that the Wachovia COSI would be replaced with the Wells Fargo COSI in December 2009.  Ex. C to Complaint (docket no. 1-1 at 46-47).  In May 2012, plaintiffs filed a putative class action in King County Superior Court, alleging that one or both index substitutions constituted a breach of contract, a breach of the covenant of good faith and fair dealing, a violation of Washington's Consumer Protection Act ("CPA"), and unjust enrichment.  Complaint at ¶¶ 78-126.[5]  Wells Fargo timely removed the case to this Court, and now moves for summary judgment in its favor on all of these claims.

**Discussion**

**A.      Standard for Summary Judgment**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  A fact is material if it might affect the outcome of the suit under the governing law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from

---

parties and for amending pleadings have long since passed, <u>see</u> Minute Order (docket no. 43), and the Court sua sponte DISMISSES plaintiffs' claims against defendants Does 1 through 25 without prejudice pursuant to Federal Rules of Civil Procedure 4(m) and 41(b).

[5] The Court previously dismissed with prejudice three of plaintiffs' four breach of contract claims on federal preemption grounds.  <u>See</u> Order (docket no. 27).  The sole remaining breach of contract claim and the bad faith, CPA, and unjust enrichment claims are premised on the notion that Wells Fargo and/or its predecessor, Wachovia Mortgage, FSB f/k/a World Savings, failed to obtain the requisite approval from the "primary regulator," as contemplated in the promissory notes at issue.  <u>See id.</u> at 9, 18-23.  All other theories of relief on which plaintiffs' state law claims are or could be based are preempted by federal law. <u>Id.</u> at 7-23.

ORDER - 4

1  which all "justifiable inferences" are to be favorably drawn.  <u>Id.</u> at 255, 257.  When the

2  record,[6] however, taken as a whole, could not lead a rational trier of fact to find for the

3  non-moving party, summary judgment is warranted.  <u>See</u> <u>Celotex</u>, 477 U.S. at 322.

4  **B.**     <u>**Use of Alternative Index**</u>

5          The Home Owners' Loan Act of 1933 ("HOLA") was enacted in the midst of the

6  Great Depression to restore the public's confidence in savings and loan associations by

7  <u>*inter alia*</u> implementing centralized regulation according to nationwide "best practices."

8  <u>Silvas v. E*Trade Mortg. Corp.</u>, 514 F.3d 1001, 1004 (9th Cir. 2008); <u>see also</u> <u>Fidelity</u>

9  <u>Fed. Sav. & Loan Ass'n v. de la Cuesta</u>, 458 U.S. 141 (1982).  In 1989, HOLA was

10 substantially amended by the Financial Institutions Reform, Recovery, and Enforcement

11 Act ("FIRREA"), Pub. L. No. 101-73, 103 Stat. 183 (1989), and the powers and duties of

12 the regulatory agency created by HOLA were transferred to the Department of Treasury's

13 Office of Thrift Supervision ("OTS").  <u>See</u> FIRREA § 301 (formerly codified at 12

14 U.S.C. § 1462a); <u>see also</u> <u>Bank of Am. v. City & County of San Francisco</u>, 309 F.3d 551,

15 559 n.4 (9th Cir. 2002).

---

[6] Wells Fargo has requested that the Court take judicial notice of various materials.  <u>See</u> Request (docket no. 88); Supp. Request (docket no. 104).  With three exceptions, Wells Fargo's request is unnecessary because the documents at issue are attached to declarations satisfying the requirements of Federal Rule of Civil Procedure 56(c)(4).  As to Item No. 25 in Wells Fargo's Request, docket no. 88, described as the Board of Governors of the Federal Reserve System's website, no recitation of the adjudicative facts of which Wells Fargo wishes the Court to take judicial notice was electronically filed or otherwise provided to the Court, and the Court declines to take judicial notice of all information published on such website.  With regard to the opinion letter of Norman H. Raiden, General Counsel of the now defunct Federal Home Loan Bank Board, and the Joint Case Management Statement filed in <u>Tofighbakhsh v. Wells Fargo & Company</u>, San Francisco County Superior Court Case No. CGC-09-495450, attached as Exhibits A and B to Wells Fargo's Supplemental Request, docket no. 104, the Court also declines to take judicial notice.  Such materials do not contain "adjudicative facts," <u>see</u> Fed. R. Evid. 201, but rather offer legal opinions concerning, respectively, federal preemption or the relatedness of cases pending in different forums.  The opinions are not relevant to the issues decided in this Order.

ORDER - 5

In 1996, OTS adopted a regulation dealing with adjustable rate residential loans secured by borrower-occupied property. The regulation requires that federal savings associations use a national or regional index for ARM loans unless they follow the procedure for using an alternative, "readily available and independently verifiable," index. See 12 C.F.R. §§ 560.35(d)(1) & (2); see also 61 Fed. Reg. 50951-01 at 50955 (Sep. 30, 1996). A federal savings association may use such alternative index "30 days after filing a notice unless, within that 30-day period, OTS has notified the association that the notice presents supervisory concerns or raises significant issues of law or policy." 12 C.F.R. § 560.35(d)(3).[7]

The language of the notes at issue is consistent with OTS's regulation in that substitution of a national or regional index would not have required OTS's approval, but use of an alternative index was permitted only if, during the 30-day period after filing of the requisite notice, OTS stated no objection. Plaintiffs do not dispute that OTS silence in the wake of a filed notice concerning the substitution of an alternative index would constitute the "primary regulator" approval contemplated in the three promissory notes

---

[7] In adopting § 560.35, OTS was attempting to permit federal savings associations (or thrifts) "greater flexibility in structuring and managing their loan portfolios." 61 Fed. Reg. at 50955. Unlike national banks, thrifts are subject to a rule requiring them to "hold an average of 65% or more of their assets in residential mortgage loans." Id. Not being subject to this qualified thrift lender ("QTL") rule, national banks often sell the loans they originate on the secondary mortgage market, which usually requires a national or regional index for ARM loans, and thus banks do not generally develop alternative indices. Id. Because of the QTL rule, however, thrifts are more vulnerable to interest rate risk, and OTS sought to enable thrifts to link their "yields on 1-4 family residential loans with the rates they pay on deposits" to help them manage their risk and "offset the competitive disadvantage resulting from the QTL rule." Id.

ORDER - 6

executed in favor of World Savings.[8]  Plaintiffs argue, however, that the notices sent to OTS, on behalf of (i) World Savings, which would become Wachovia Mortgage, FSB, and (ii) Wells Fargo, were deficient and that, as a result, OTS's explicit lack of objection was meaningless.  Plaintiffs' contention lacks merit.

1.   **<u>Wachovia COSI</u>**

In December 2006, Wachovia, acting on behalf of World Savings, submitted notice pursuant to § 560.35(d)(3), indicating as follows:

> If OTS has no objection pursuant to Section 560.35(d)(3), World plans to begin use of the Wachovia COSI as soon as possible in the origination of new loans.
>
> Shortly following the introduction of the Wachovia COSI for new loan originations, World will undertake an index substitution process, as contemplated by the loan documents, for existing loans that use Current [GDW] COSI.
>
> Although specific plans for substitution have not been finalized, World has undertaken a similar index substitution in the past, when an index previously in use ceased to exist and intends to follow a similar process. Before undertaking any substitution or [sic] the Current COSI, World will submit its substitution plan to OTS for review and give OTS opportunity to comment on both the substitution plan and the materials being provided to borrowers.

---

[8] In his deposition, plaintiffs' expert, Donald W. Coker, suggested that, pursuant to banking industry practice, a financial institution would receive "something back from the regulator in writing" that approved, took no exception to, or disapproved of a proposal. Coker Dep. at 96:1-6, Ex. A to McClendon Supp. Decl. (docket no. 172-1 at 10).  When asked whether the applicable regulations require the regulator to respond in writing, Mr. Coker indicated "I don't recall off the top of my head if they do or not."  <u>Id.</u> at 96:16-19; <u>see also id.</u> at 96:13-14 ("I don't think that that is really in the regulations.").  Wells Fargo has moved to exclude Mr. Coker's testimony, <u>see</u> Reply at 4-5 (docket no. 103); Supp. Reply at 8 (docket no. 171), but the Court declines to do so.  Mr. Coker's declaration, docket no. 101, rebuttal report, docket no. 259-5, and deposition, docket nos. 172-1 & 259-6, have been fully considered, and the Court concludes that they fail to raise any genuine dispute of material fact.

ORDER - 7

Ex. 1 to Davis Decl. (docket no. 74).  Plaintiffs assert that the above language is operative only with regard to new loans, and not as to existing loans like those at issue in this case.  Plaintiffs' argument ignores the similarity in the phrases "plans to" and "will undertake," which are used with respect to new loans and existing loans, respectively.  Both clauses connote an intent to act and, contrary to plaintiffs' reasoning, "will undertake" is actually more, rather than less, forceful than "plans to."  <u>See</u> WEBSTER'S THIRD NEW INT'L DICTIONARY at 1730 & 2491 (1981) ("plan" means "to devise or project the realization or achievement of **:** . . . to have in mind **:** INTEND," while "undertake" is defined as "to take upon oneself solemnly or expressly **:** put oneself under obligation to perform **:** CONTRACT, COVENANT . . . GUARANTEE, PROMISE").[9]

Plaintiffs' suggestion that OTS viewed Wachovia's notice as restricted solely to new loans is belied by OTS's written response, which broadly states that, "based upon the regulatory criteria and the representations made in the Notice, the OTS takes no objection to World's use of the proposed alternative adjustable-rate loan index."  Ex. 5 to Davis Decl. (docket no. 78).  Although OTS, in its response, described Wachovia's notice as seeking "to establish an alternative adjustable-rate loan index for <u>*new mortgage loans*</u>,"

---

[9] On the subject of whether the Wachovia COSI was approved for existing, as opposed to new, loans, Wells Fargo submitted supplemental authority consisting of a transcript of an oral ruling announced by a bankruptcy judge in the Eastern District of Virginia.  <u>See</u> Ex. 2 to Notice of Supp. Authority (docket no. 176).  Plaintiffs moved to strike the notice of supplemental authority and the exhibits thereto because Wells Fargo had filed a brief three days earlier that did not cite the bankruptcy judge's oral ruling, which predated the brief by roughly three weeks.  Plaintiffs' motion to strike, docket no. 181, is DENIED.  The Court has reviewed the transcript of the oral ruling, but finds it of little value because it contains no discussion of the underlying facts.

ORDER - 8

*id.* (emphasis added), the concluding sentence, in which OTS expressed its lack of objection, contains no similar qualification.[10]

Moreover, when Wachovia, as promised, provided to OTS the details concerning substitution of the Wachovia COSI for the GDW COSI and the related form of letter it intended to send to borrowers, OTS orally conveyed to Wachovia that "no OTS approval or non-objection [was] needed." *See* Exs. 3 & 4 to Davis Decl. (docket nos. 76 & 77). Indeed, as of the date of that telephonic conference (May 30, 2007), more than thirty days had elapsed from the date Wachovia's notice had been filed, and OTS's subsequent silence had operated as approval with regard to substitution of the Wachovia COSI for existing loans. *See* 12 C.F.R. § 516.280(b) ("If OTS fails to act under paragraph (a)(1) of this section, your application is approved."); *see also* 12 C.F.R. § 560.35(d)(3).[11] The

---

[10] Plaintiffs attempt to draw an inference unfavorable to Wells Fargo from a letter dated September 3, 2013, Ex. J to Farrow Decl. (docket no. 259-10), in which the regulator declined Wells Fargo's invitation to provide a declaration stating that OTS did not express any "supervisory concerns" and did not notify Wachovia of any "significant issues of law or policy" related to the substitution of the Wachovia COSI or its implementation with respect to existing loans. Plaintiffs' suggestion that a jury could consider such refusal "informative," 2d Supp. Resp. at 4 n.6 (docket no. 258), is unreasonable. As indicated in the letter, the regulator granted permission to produce "all written communications between Wachovia and the OTS concerning the subject matter of the above-captioned litigation," and thus, no compelling need had been shown for testimony in the form of a declaration by the regulator. Ex. J to Farrow Decl. (docket no. 259-10 at 3). In other words, the documents say what they say and speak for themselves.

[11] In their initial response to Wells Fargo's motion for summary judgment, plaintiffs asserted that § 560.35 does not apply to plaintiffs' loans because they are not secured by borrower-occupied property. *See* Resp. at 16 n.17 (docket no. 100). Plaintiffs did not subsequently repeat or elaborate on this argument, and they have identified no regulation that would have required OTS's approval of an alternate index for ARM loans secured by investment property. Thus, to the extent plaintiffs contend that § 560.35 does not govern as to their non-residential loans, they have failed to demonstrate that OTS's approval of the substitute indices was even required. More importantly, even if § 560.35 did not apply to plaintiffs' loans, it did govern residential ARM loans that Wachovia Mortgage, FSB might originate in the future, and consequently, when Wachovia obtained from OTS permission to use the Wachovia COSI on new loans, it received from the "primary regulator" the approval of the substitute index, which was all that was required by the terms of promissory notes at issue.

Court is persuaded that, as a matter of law, Wachovia obtained the requisite approval of the "primary regulator" to substitute the Wachovia COSI for the GDW COSI.

### 2. **Wells Fargo COSI**

In July 2009, Wells Fargo & Company, acting on behalf of both Wachovia Bank and Wachovia Mortgage, FSB, the latter of which subsequently merged into Wells Fargo Bank, N.A., a subsidiary of Wells Fargo & Company, submitted to OTS and the Office of the Comptroller of the Currency ("OCC") a notice pursuant to § 560.35(d)(3) and 12 C.F.R. § 34.22,[12] proposing as follows:

> If you have no objection pursuant to Section 560.35(d)(3) or 12 CFR Section 34.22(b), as applicable, Wachovia will undertake an index substitution process, as contemplated by the loan documents, for existing loans that use Wachovia COSI.

Ex. 6 to Davis Decl. (docket no. 79); see also Ex 8 to Davis Decl. (docket no. 81) (similar notice sent in August 2009 only to OCC on behalf of Wachovia Bank and Wells Fargo Bank, N.A.). The notice explained that Wachovia Mortgage, FSB no longer offered new loans based on the Wachovia COSI, and that Wells Fargo did not intend to offer new loans using the Wells Fargo COSI; the substitution for which OTS and OCC approval was sought related only to existing loans. Id. In August 2009, OTS explicitly indicated no objection to the substitution of the Wells Fargo COSI, Ex. 7 to Davis Decl. (docket

---

[12] If a national bank (as opposed to a thrift) wishes to use an alternative index for particular loans (namely, loans maturing more than one year after issuance and secured by the borrower's principal dwelling), it must provide notice to OCC (rather than OTS), which then has thirty days within which to indicate, if appropriate, that the notice "presents supervisory concerns or raises significant issues of law or policy." 12 C.F.R. § 34.22(b). If OCC responds with no objection or remains silent after thirty days, then the alternative index may be used. Id. On July 21, 2011, after the events at issue in this case, all functions and powers of OTS were transferred to OCC. See Davis Decl. at ¶ 4 (docket no. 73).

ORDER - 10

1  no. 80), and in September 2009, OCC "approve[d] the use of the Wells [Fargo] COSI on

2  the portfolio of ARM loans currently held by Wachovia and that will be acquired by

3  Wells [Fargo]," Ex. 9 to Davis Decl. (docket no. 82).

4        Plaintiffs do not dispute the authenticity or admissibility of the correspondence

5  between Wells Fargo & Company and the "primary regulator," either OTS or OCC.

6  Rather, plaintiffs contend, at least with respect to OCC, that approval was explicitly

7  premised on a misrepresentation and therefore lacks legal effect.[13]  The misrepresentation

8  alleged by plaintiffs appears in the second footnote of OCC's response, which states:

---

[13] Plaintiffs also assert that a jury could conclude that OTS "did not approve the Wachovia COSI for use in connection with the Plaintiffs' loans."  2d Supp. Resp. at 4 (docket no. 258 at 6).  Wells Fargo has interpreted this sentence as attempting to impose a duty to obtain regulatory approval for the substitution of an index specifically relating to plaintiffs' existing loans, and has argued that such proposition runs contrary to the language of the promissory notes at issue.  *See* 2d Supp. Reply at 2-3 (docket no. 264 at 3-4).  Plaintiffs moved to strike this discussion on the ground that it was raised for the first time in a reply.  Plaintiffs also moved to strike four documents attached to a supplemental declaration, *see* Exs. 2-5 to McClendon 2d Supp. Decl. (docket nos. 266-1 through 266-4), that were not produced along with the thirteen items OCC had previously agreed to release to plaintiffs' counsel.  Plaintiffs' motion to strike, docket no. 270, is DENIED.  In its Second Supplemental Reply, Wells Fargo was merely responding to plaintiffs' statement concerning what a trier-of-fact might find.  The Court agrees with Wells Fargo that the promissory notes do not require that a substitute index be approved by the "primary regulator <u>for use with this Loan</u>," *see* 2d Supp. Reply at 2:22 (docket no. 264 at 3), and that, to the extent plaintiffs argue otherwise, they are improperly trying to modify the wording of the relevant provision of the notes by adding the double-underlined text.  With regard to the four later disclosed documents, Wells Fargo has not offered them for their substance, which is de minimis given that three of them are merely reports of successful facsimile transmissions and the fourth is simply a draft of the notice that Wachovia eventually submitted to OTS.  Rather, Wells Fargo presented the documents to provide context concerning the discovery battle that culminated in a letter from OCC, which denied plaintiffs' request that OCC waive its bank examination privilege as to over 900 documents, indicated that OCC "has authorized the release of the documents and information that are most relevant to this case," and observed that plaintiffs do not dispute receipt of all such documents.  Ex. 9 to McClendon 2d Supp. Decl. (docket no. 265-9).  The Court is satisfied that plaintiffs have had ample opportunity to conduct discovery, have had access to all of the relevant correspondence between OTS and Wachovia, *see* Ex. 14 to McClendon Decl. (docket no. 86-1), as well as between OTS and Wells Fargo or its parent, and have not demonstrated any likelihood that Wells Fargo has improperly withheld responsive documents that might support plaintiffs' claim that, with respect to the substitutions of the Wachovia COSI and/or Wells Fargo COSI, OTS expressed "supervisory concerns" or objections based on "issues of law or policy."  Moreover, the Court concludes that Wells Fargo has not operated in "bad faith," particularly in light of OCC's letter dated July 15, 2014 (docket no. 265-9), and plaintiffs' motion for sanctions, docket no. 256, is therefore DENIED.

ORDER - 11

1  "Wachovia COSI was approved by the OTS for use by World Savings in May 2007.

2  Wachovia COSI replaced a similar World Savings index the OTS had approved in 1997."

3  Ex. 9 to Davis Decl. (docket no. 82).  In contrast, OTS's response contains no similar

4  recitation of procedural facts, and plaintiffs make no comparable argument with regard to

5  OTS's lack of objection to the substitution of the Wells Fargo COSI.

6        Plaintiffs' contention concerning OCC's letter is without merit.  The Court is

7  satisfied that the discussion in the second footnote, concerning OTS's prior forbearances,

8  is sufficiently accurate.  Moreover, the Court is not persuaded that OCC viewed these

9  procedural facts as "representations" being made by the regulated entity.  Unlike in other

10 passages of its response, OCC did not qualify the statements at issue with the phrase "the

11 Banks have represented."[14]  Indeed, OCC's reference to a May 2007 approval date is

12 inconsistent with the attachments that were included with the notice submitted by Wells

13 Fargo & Company, which showed that OTS expressed its lack of objection in January

14 2007.  _See_ Exs. 6 & 8 to Davis Decl. (docket nos. 79 & 81).  In addition, the filed notice

15 did not actually represent that OTS's approval occurred in May 2007; it stated only that

16 the Wachovia COSI had been in use since May 2007.  _Id._  OCC's understanding might

17 have been based on its own or OTS's records, which likely would have reflected that

18 OTS orally communicated in late May 2007 that no "non-objection" was necessary with

---

[14] _Compare_ Ex. 9 to Davis Decl. (docket no. 82 at 3) ("The Banks have represented that the new index will closely track the historical movements of the Wachovia COSI. . . .  The Banks have further represented that prior to the first publication of the new index value, the Wells [Fargo] COSI calculation will be validated by an independent outside auditor. . . .  The Banks have represented that borrowers will have convenient access to the Wells [Fargo] COSI index.").

ORDER - 12

respect to the form of letter to be sent to borrowers.  <u>See</u> Ex. 4 to Davis Decl. (docket no. 77).  The Court concludes, as a matter of law, that plaintiffs have no basis for claiming Wells Fargo or its predecessor failed to obtain the requisite approval of the "primary regulator" to use or substitute the alternative indices, namely the Wachovia COSI and the Wells Fargo COSI.[15]

**Conclusion**

For the foregoing reasons, Wells Fargo's motion for summary judgment, docket no. 72, is GRANTED.  Plaintiffs' claims against defendants Does 1-25 are DISMISSED without prejudice as discussed in footnote 4.  Plaintiffs' motion for sanctions, docket no. 256, is DENIED as indicated in footnote 13.  In light of the Court's decision, Wells Fargo's alternative motion pursuant to Federal Rule of Civil Procedure 12(c), docket no. 220, is STRICKEN as moot, and plaintiffs' motion for class certification, docket no. 37, is DENIED.  The Clerk is DIRECTED to enter judgment consistent with this Order, in favor of Wells Fargo and against plaintiffs, to CLOSE this case, and to send a copy of this Order to all counsel of record.

///

///

///

---

[15] As a result of its rulings, the Court need not address Wells Fargo's alternative arguments in support of summary judgment, namely that plaintiffs' claims are precluded by the <u>Noerr-Pennington</u> doctrine, the voluntary payment doctrine, or on federal preemption grounds, that plaintiffs' bad faith and CPA claims are time barred, that plaintiffs' remedies are contractually limited, that the regulatory exemption from CPA liability set forth in RCW 19.86.170 applies, or that plaintiffs' unjust enrichment claim is precluded by the parties' express contract.

ORDER - 13

1   Dated this 24th day of September, 2014.

2

3   _____
    THOMAS S. ZILLY
4   United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER - 14